**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FLORIDAN HOTEL OF TAMPA, INC., Respondent.**

**No. 20081.**

United States Court of Appeals
Fifth Circuit.

June 7, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Hans J. Lehmann, Atty., N.L.R.B., Washington, D. C., for petitioner.

L. Robert Frank, Tampa, Fla., for respondent.

Before RIVES, LEWIS*, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This case presents a novel question: May an employer with no discriminatory purpose prohibit the wearing of pins indicating union membership or status by employee union members in regular and frequent contact with guests and customers of a hotel? We denied enforcement of the order of the Board in N. L. R. B. v. Floridan Hotel of Tampa, Inc., 5 Cir., 1962, 300 F.2d 204, saving this question for consideration on remand. The facts are fully stated there, and will be summarized here for the purposes of this opinion.

Respondent operates a hotel in Tampa, Florida with a dining room, bar and banquet rooms. It entered into a collective bargaining agreement on February 21, 1960 with a local of the Hotel & Restaurant Employees and Bartenders Union. Some one hundred ten of its approximately one hundred thirty employees were members of the union when the controversy which is the subject matter of this proceeding arose.

Uniforms were furnished by Respondent to bellboys, doormen, passenger elevator operators, and maids. Bartenders were furnished jackets. Waitresses were required, by the union contract, to supply their own uniforms of white nylon. Other employees wore ordinary clothing.

Between February 2, and April 1, 1962, the union distributed union pins to its members as part of an organizational effort to increase union membership. There was no rival union nor any anti-union faction. The pins were of two types, one for regular members and the other for stewards. The membership pin is in the form of a shield and identifies the union by initials. In addition, it spells out the name of the union in letters about one tenth of an inch in height. The steward pin is circular in shape, and identifies the union by initials only. Each pin is smaller than a dime.

On April .1, 1960, Respondent issued the following notice:

## "BULLETIN

"A number of guests [1] have called to the attention of the Management that many employees are wearing union badges during working hours and on uniforms.

"We do not feel that it lends to the dignity of our Hotel for employees to openly display badges of any sort, whether it be a union badge, lodge, or what have you.

"Therefore, there is hereby established a rule that no badges of any kind will be worn by any employee so that they may be seen by any customer or guest.

## "MANAGEMENT
## "HOTEL FLORIDAN."

Upon non-compliance with this company directive, various employees including the bell captain, bartenders, waitresses, maids, kitchen help, a cashier, a glass washer, a freight elevator operator, a trashman, and an engineer were warned, with some being threatened with discharge. Some of the employees have no contact with the public. However, the president of Respondent testified that the rule was intended to apply only to employees who met the public and in public areas.

The Board rejected the finding of the Examiner that the rule was adopted in an attempt to dissipate the union majority within the bargaining unit, but concluded that the rule was broader than the claimed purpose and required that Respondent cease and desist from maintaining the rule in effect. It was deemed unnecessary to consider whether a different rule which would cover those employees in continuous and daily contact with the public would also be violative of the Act.

---

* Of the Tenth Circuit, sitting by designation.

1. The evidence developed that only one guest had called this fact to the attention of management. It is not claimed that it was in the nature of a complaint.

Upon a consideration of the original petition to enforce, we concluded that the Board's determination that the rule prohibited the wearing of union insignia by all members while at work in the hotel was unsupported. We stated that the proper order would direct the Respondent to cease and desist from prohibiting the wearing of union insignia by employees whose duties did not bring them into regular and frequent contact with the guests and customers of the hotel, pointing out that both the Examiner and the Board recognized that the right of employees to wear a union badge while at work does not exist under all circumstances and all conditions. We noted that the Board expressly refrained from deciding the validity of the rule as to those employees in contact with the public, and remanded to give the Board an opportunity to pass on that question.

On remand the Board reiterated the prior order, *in toto,* in the following language.

"The right of employees to wear union insignia at work has long been recognized as a protected activity. The promulgation of a rule prohibiting the wearing of such buttons constitutes a violation of Section 8(a) (1) in the absence of evidence of 'special circumstances' showing that such a rule is necessary to maintain production and discipline. No 'special circumstances' appear to have existed at the Respondent's hotel. As the facts show, there was no strike, and there was no union animosity or friction between groups of employees. The buttons were being worn only as part of the recognized and certified Union's campaign to increase its membership. Nor were the legends on the buttons provocative in any way. Indeed, there is no contention that a prohibition against wearing the buttons was in any way necessary to maintain employee discipline. Moreover, the evidence does not support the Respondent's assertion that the buttons, which were small, neat and inconspicuous, detracted from the dignity of the hotel, and there is no evidence that they caused any diminution of the Respondent's business. Under these circumstances, we find that the fact that the employees involved come in contact with hotel customers does not constitute such 'special circumstances' as to deprive them of their right, under the Act, to wear union buttons at work. The rule posted by the Respondent was therefore not necessary to maintain employee discipline or the services provided by the hotel."

■■ There are two rights here involved. The right of the union members to wear the pins springs from § 7 of the Act, 29 U.S.C.A. § 157, affording employees the right to self-organization, to form, to join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or for other mutual aid or protection. Interference with these rights runs afoul of § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), and constitutes an unfair labor practice by the employer. On the other hand, management has the undoubted right to manage. Absent a discriminatory purpose, as is the case here, it may promulgate and enforce rules to insure an efficient and orderly operation, including the reasonable regulation of the dress of its employees, all to the end of the preservation of its business under the free enterprise system as we know it.

And, it is at once apparent that the narrow question presented, based on the wearing a small pin indicating union membership, falls into the grey area between these fundamental rights. The answer lies, as is the case in many instances, in the context of a balancing of rights with each being accorded insofar as possible.

A somewhat similar problem was presented in Republic Aviation Corporation v. N. L. R. B., 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, a case involving

a company rule against solicitation, and the discharge of employees for failure to comply with the employer's request that they discontinue wearing union steward buttons. While not in point on its facts for the purposes of this case, the court did note the undisputed right of organization in the employees and the equally undisputed right of the employer to maintain discipline, and said:

"* * * Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon the employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society."

This case, relied on by General Counsel for the Board, is not authoritative, nor are the solicitation cases relied on by Respondent. Marshall Field & Company v. N. L. R. B., 7 Cir., 200 F.2d 375 and N. L. R. B. v. Great Atlantic & Pacific Tea Company, 5 Cir., 1960, 277 F.2d 759. The case of Boeing Airplane Company v. N. L. R. B., 9 Cir., 1954, 217 F.2d 369, involving a shop committeeman badge being worn in an explosive situation between rival unions is not helpful although there the right to wear the badge was given effect. In Caterpillar Tractor Company v. N. L. R. B., 7 Cir., 1956, 230 F.2d 357, it was held that employee union members were not entitled to wear buttons bearing the slogan "Don't be a scab." The court cautioned by way of dictum in that case, in the face of the assertion by the employer that the wearing of other slogan buttons might be prohibited, that the right of the employer was:

"* * * limited to the restriction of activities which disrupt, or tend to disrupt, production and to break down employee discipline, and does not include restriction of passive inoffensive advertisement of organizational aims and interests, i. e.,

the wearing of advertising insignia and buttons, which in no way interferes with discipline or efficient production. Cf. Republic Aviation Corporation v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372."

In addition to finding no help in the decided cases, we are also under the handicap of a sparse record, mainly stipulated, on which to make a determination regarding this question. The record is adequate for the original holding by the Board that the rule was applied to employees not embraced in its terms. However, upon remand an entirely new question was presented. Neither the General Counsel nor Respondent sought to submit additional evidence, 29 U.S. C.A. § 160(e).

Therefore, we think it proper to point out that our decision is limited to the restricted facts before us. For example, there is no evidence that the union pins detracted from the dignity of the business operation or of the employees wearing them on duty. Thus, whether a different case might be presented as to employees in uniform and those not in uniform is not presented. There is no evidence of customer complaints. As stated, one customer did call the wearing of the pins to the attention of management. There is no evidence of any diminution in the business of the hotel. No friction resulting from animosity between rival unions or union and non-union groups of employees that might interfere with normal operational and disciplinary procedures of the hotel was present.

■ In short, what we have before us is a rule prohibiting the wearing of a small pin,[2] much like the ordinary civic club pin, by union members denoting their interest and pride in their organization and by stewards signifying their union position. We approve the finding by the Board that this may not be proscribed, with the caveat that our approval is related specifically to the factual situa-

2. The insignia in question have been variously described as badges, buttons and pins, but each and every instance refers to the same small insignia, more akin in common parlance to a pin than to a badge or button.

tion here presented, or in a like or substantially related manner.[3]  Accordingly, the order of the Board is modified, *pro tanto*, to accord with this caveat.  Cf. N. L. R. B. v. Great Atlantic & Pacific Tea Co., supra.

As modified, the order will be enforced.

LEWIS, Circuit Judge (dissenting).

As my brother BELL indicates, the question here, when approached without artifice, is whether uniformed hotel employees such as waitresses and bellboys have a protected right to wear a union badge as a symbol of their position, interest and pride in their organization. The Board held that an order of management prohibiting the wearing of any pin or badge by this type of employee was violative of Sec. 8(a) (1) of the Act and this court grants enforcement, narrowing its approval to the particular facts of this case.  The effect of the decision is thus to hold that a hotel waitress has a protected right to wear a union badge but that such right is a limited one subject to loss under circumstances not present in the case at bar.  I believe that no special circumstances other than those inherent in the question as stated are necessary to show the reasonableness of management's concern at this curtailment of its power to manage.

The operation of a hotel is a highly competitive business dependent for its economic health in large part upon the good will generated by its service employees who are in continuous and daily contact with the public.  To obtain customer satisfaction and to avoid customer irritation through the medium of its employees are daily problems of hotel management.  Here, after the wearing of union pins by some of its waitresses was called to its attention by a customer, management decided that the display of unionism in such fashion was an actual or potential source of customer irritation. The error of the Board's basic reasoning seems glaringly apparent in the words of the trial examiner in his analysis of this decision of management:

"It (management) apparently issued its rule upon the representation of one patron.  Certainly this one man, who allegedly was rebuffed by the appearance of the pins, does not represent a true cross-section of the opinion of the hotel guests."

Management is not required to cater to but a cross-section of its customers and would probably commit economic suicide by limiting its service in such regard.  And to me it seems totally unrealistic to deny or ignore the fact that unionism is a source of controversy.  A multitude of Board decisions are premised upon a finding of "anti-union animus."  Rivalry exists between competitive unions and often unions take publicized positions upon controversial political and legislative issues.  These issues are not of management's making and it should not be enforced to expose its customer good will to the potential of loss of business by indirection.

The validity of the Board order can find no warranted comfort in its supporting findings of fact.  Respondent was not required to await diminution of business before acting.  Its management had a right to act to avoid risk of loss.  The fact that the badges worn were "small, neat and inconspicuous" is not determinative.  Surely the issue is broader and cannot turn on a continuing examination by the Board, and by review of this Court, of whether the particular pins are in good taste or not.

Again, as Judge BELL states, the case requires a balancing of the right of employees to engage in union activities as against the right of management to man-

---

3.  The order of the Board presently uses the following broad language:
    "1.  cease and desist from:
    "(a) promulgating and maintaining a rule prohibiting its employees from wearing union buttons or insignia,
    * * * *"

age. I am of the opinion the Board order has weighted the scale and I would deny enforcement to the extent the order affects employees who are in continuous and daily contact with the public.