**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HARRAH'S CLUB, Respondent.**

**No. 19177.**

United States Court of Appeals Ninth Circuit.

Sept. 28, 1964.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee M. Modjeska, Gary Green, National Labor Relations Board, Washington, D. C., for petitioner.

Nathan R. Berke, Severson, Zang, Werson, Berke & Larson, George Brunn, San Francisco, Cal., for respondent.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

For many years respondent Harrah's Club[1] has regulated strictly the dress and appearance of its employees who come in contact with the public. One of

1. Excerpts from the findings of the Trial Examiner as to the nature of the operation show from undisputed facts the following:

"Harrah's Club is a Nevada corporation which for several years past has been engaged in the business of owning and operating gambling casinos and restaurants in Reno and Stateline, Nevada. The operations at Stateline, Nevada, are the only operations here involved.

"Harrah's Club is composed of a multi-million dollar complex of buildings devoted to the entertainment of its patrons. The main building houses a large casino devoted exclusively to gambling by means of all kinds of games of chance, such as craps, roulette, black-jack, keno, baccarat, and bingo. * * * In the same building the South Shore Room is located. This room is a large theater-restaurant which will accommodate approximately 750 patrons. The room faces toward a large full-scale stage, comparable in size to any of the large theater stages in New York. In this room the Company offers dinner to its patrons together with entertainment by the highest paid stars of 'stage, screen and television.' The decor, service, food,

the rules of the establishment prohibits [2] the wearing by such employees of any jewelry or other personal adornment on the uniform. This rule is enforced by daily inspections conducted by management personnel before the employees go on duty. The rule has been strictly enforced in the past against badges, pins, and buttons showing religious, political, or social affiliations.

One day in 1962 one of the inspectors discovered that several of the uniformed employees were wearing union buttons or pins. It is not clear from the record that he knew they were union buttons; in fact, he testified that he did not know they were union buttons. He reported the buttons to his superiors, who in turn issued a circular to all employees reminding them of the rule against jewelry on the uniform. However, they continued to wear their union buttons. At the next inspection, the first employee in line was asked if he would persist in wearing the button. When he replied that he would, he was threatened with discharge, whereupon he and the other members in question took off their buttons. It was made clear, in answer to a question by one of the employees, that the prohibition was not concerned solely with union buttons but with jewelry or pins or buttons of any sort.[3] The record shows that the wearing of union buttons was not part of any concerted campaign to organize the employees, or to promote collective bargaining, or to gain better hours, wages, or working conditions. There is no background of labor unrest in respondent's establishments, and respondent for many years has had a collective bargaining agreement with the union in question.

These essentially undisputed facts were made the basis of a charge before the National Labor Relations Board of a violation of section 8(a) (1) of the National Labor Relations Act, 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158 (a) (1) (1958). The trial examiner found no violation and recommended that the complaint be dismissed. The Board by a two-to-one vote reversed the finding of the trial examiner and found that the company rule as applied to wearing union insignia violated section 8(a) (1) of the Act. It now seeks enforcement of its order, invoking the jurisdiction of this court under section 10(e) of the National Labor Relations Act, 49 Stat. 453 (1935), as amended, 29 U.S.C. § 160(e) (1958).

Before there can be a violation of section 8(a) (1) [4] the employer must have

and entertainment furnished in the South Shore Room are on a par with similar services rendered by the finest theater-restaurants in the world. In addition, the building has such incidental facilities as are necessary in the accommodation of large numbers of people, such as restrooms, first-aid rooms, and large parking lots. The facilities described above are all in what might be termed the public areas of the Club.

\* \* \* \* \*

" \* \* \* The Company employs between 1,500 and 2,000 employees of all types. Of that number about 500 employees are engaged in the culinary trades, which include waiters, waitresses, busboys, bartenders, cocktail waitresses, etc. For the convenience of employees and the Club, the Company maintains two employee cafeterias on the basement level of the main building. \* \* \* The two cafeterias are side by side on the lower level and both open from a common hallway. Adjacent to the cafeterias is a TV room, which all employees may use as a lounge. All of these areas and the cafeterias are in the portion of the building *not* open to the public."

2. The trial examiner found that "for several years prior to August, 1962, the company had a rule that 'no emblems, badges, buttons, jewelry or ornaments of any kind, except name pins, shall be displayed on uniforms worn by employees who come into contact with the public.' "

3. In answer to a question "why we shouldn't wear union buttons" the company representative said "that he hadn't said anything about union buttons, that he meant 'any buttons, Mickey Mouse buttons or Nixon buttons' and that if [the employee] wore any of them he could be fired for 'disobeying a company rule.' "

4. "It shall be an unfair labor practice for an employer—(1) to interfere with,

interfered with, restrained, or coerced employees in the exercise of rights guaranteed by section 7, 49 Stat. 452 (1935), as amended, 61 Stat. 140 (1947), 29 U.S.C. § 157 (1958). We do not think that, under the circumstances of this case, the wearing of union buttons is a right guaranteed by section 7. Section 7 reads in part as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *.*" (Emphasis added.)

The Supreme Court has held that the wearing of union buttons comes under the heading of "other concerted activities."[5] However, we do not think that the Supreme Court intended to erect this into a rule which makes the wearing of union buttons per se a guaranteed right.[6] We think there must be evidence of a purpose protected by the act—i. e., collective bargaining or other mutual aid or protection. This record is totally devoid of any evidence of such a purpose. On the contrary, the only evidence on the question of purpose—the testimony of the employees themselves—shows that they had no express purpose in mind in wearing the buttons. There was no attempt to organize the employees: they were already organized. There was no attempt to wring from management better wages, hours, or working conditions. The Board has cited several cases to show that the wearing of union buttons is a

right guaranteed by section 7,[7] but it has cited no case where there was not at least *some* evidence of a purpose which it is the policy of the Act to protect.

The Board in its decision relies on the Floridan case, 318 F.2d 545 (5th Cir. 1963). This case was considered by the trial examiner and he distinguished it from the instant case as follows:

"However, in my judgment the facts of this case are far different from those in the Floridan case. Here, the rule at issue is different in several respects: (1) From all the evidence in this case it appears that the rule came into being years ago, and without reference to union or concerted activities on behalf of this or any other union. (2) It is a *general* rule against the display of insignia of any group of a religious, political or fraternal nature. The rule has been invoked in the past against religious, social, and school insignia. Now, in the ordinary course of events it has been invoked against union insignia, but that act does not change the nature of the rule, which is general and nondiscriminatory. (3) The rule applies only to uniformed employees who come into direct contact with the public. (4) It applies only when those employees are on duty."

In addition it might be pointed out that in Floridan the wearing of the buttons was a part of the "Union's campaign to increase its membership" and the company rule was not announced until after the wearing of the union buttons had begun. We agree that Floridan is clearly distinguishable from this case.

---

restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this Act * * *."

5. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).

6. Cf. Boeing Airplane Co. v. NLRB, 217 F.2d 369 (9th Cir. 1954). In this case the court held that the prohibition of the wearing of union buttons in the highly explosive atmosphere which resulted

after the termination of a prolonged labor fight between two rival unions was not an unfair labor practice.

7. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982 (1945); NLRB v. Floridan Hotel of Tampa, Inc., 318 F. 2d 545 (5th Cir. 1963); NLRB v. Essex Wire Corp., 245 F.2d 589 (9th Cir. 1957); Kimble Glass Co. v. NLRB, 230 F.2d 484 (6th Cir.), cert. denied, 352 U.S. 836, 77 S.Ct. 55, 1 L.Ed.2d 54 (1956).

## 180

Even if we were to assume that a showing of a protected purpose were not necessary and the right to wear union buttons were explicitly guaranteed under section 7, we should still deny enforcement. It is the task of the Board in such cases to work out

"an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society." [8]

We do not think the Board gave proper consideration to respondent's right to maintain discipline, particularly in light of what we have previously said about lack of a protected purpose.

Relying on the Republic case, the Board contends that there were no special circumstances which justified restriction of the employees' right to wear their union buttons. The Board would limit the term "special circumstances" to those considerations relating to employee efficiency, safety, or personnel friction. We do not give the term such a restrictive meaning. Most business establishments, particularly those which, like respondent, furnish service rather than goods, try to project a certain type of image to the public. One of the most essential elements in that image is the appearance of its uniformed employees who furnish that service in person to customers. The evidence shows that respondent has paid close attention to its public image by a uniform policy of long standing against the wearing of jewelry of any kind on the uniform. Respondent should not be

8. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 797–798, 65 S.Ct. 982 (1945).

9. As stated in the dissenting opinion in NLRB v. Floridan Hotel of Tampa, Inc.,

required to wait until it receives complaints or suffers a decline in business to prove special circumstances.[9] Businessmen are required to anticipate such occurrences and avoid them if they wish to remain in business. This is a valid exercise of business judgment, and it is not the province of the Board or of this court to substitute its judgment for that of management so long as the exercise is reasonable and does not interfere with a protected purpose. The prohibition against all special adornments only applied to employees coming in contact with the public. It did not purport to prevent the wearing of buttons in nonworking time or in places not open to the public. We think that the regulation in question, under the circumstances, is reasonable.

Enforcement denied.

318 F.2d 545, 549 (5th Cir. 1963) "Respondent was not required to await diminution of business before acting."