NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LONE STAR TEXTILES, INC., GUADA-
LUPE VALLEY COTTON MILLS
DIVISION, Respondent.

No. 23902.

United States Court of Appeals
Fifth Circuit.

Nov. 22, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter Ames Eveleth, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Atty., N.L.R.B., Washington, D. C., for petitioner.

Henry L. Scott, V. Scott Kneese, Houston, Tex., Childs, Fortenbach, Beck & McClure, Houston, Tex., of counsel, for respondent.

Before BELL, COLEMAN and GOD-BOLD, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

The Board seeks enforcement of its order finding violations of Section 8(a) (1) and Section 8(a) (3) of the Act. 29 U.S.C.A. Section 158(a) (1) and (3). The question presented is whether the order has an adequate evidentiary foundation. We hold that it does and that it will be enforced.

The Section 8(a) (1) violations are based on findings of threats of reprisal, promises of benefit, coercive interrogation and undue interference in employee union activities. Whether the activity in question is proscribed by the Act depends on the facts and circumstances of each case. Martin Sprocket & Gear Co. v. NLRB, 5 Cir., 1964, 329 F.2d 417; NLRB v. Harbison-Fischer Manufacturing Co., 5 Cir., 1962, 304 F.2d 738. It is enough to say here that these findings have sufficient support in the tes-

timony concerning the activities of general manager Kelley as those activities related to employees Fellers and Grunder. It was not error to conclude that employee Aldis was a supervisor and the findings are also supported by the account of his conduct.

■ The Section 8(a) (3) and (1) violations are much closer except as to employee Fellers. He had been on sick leave due to injuries suffered on two occasions in the course of his employment. He was a leader in the union campaign to organize the plant and this fact was known to management. The sum of the testimony which was credited, including legitimate inferences, was that he reported for duty and general manager Kelley asked him to abandon his union activity in return for obtaining his old job. He refused to do so and was told a few days later that the company had no employment for him. This is disputed but the Examiner and the Board accepted this version of the testimony and it is amply supported by the record.

Employee Grunder was discharged for failing to punch the time clock when he left the plant late on Thursday afternoon to obtain a part for the plant air conditioning system but during which time he stopped for thirty minutes to have lunch. It was usual for him to leave the plant to obtain parts without punching the time clock but unusual for him to have lunch while doing so. He should have accounted for the lunch period when he returned by recording the absence on the time clock. Respondent knew that he had been active in the union movement and had suggested that he might circulate a petition in behalf of the company. At one time he had been active against the union. The issue to be decided is whether he was discharged because of his union activity.

■ Grunder was a valued long time employee. His absence was reported by supervisor Aldis with whom he had conversed at lunch. The evidence of the immediate special handling of his breach by management; the fact that no one

had been discharged in the past for failing to punch the time clock; the fact that management had sought Grunder's help without success in combating the union movement; and the fact that he was discharged without being allowed to give any explanation of the breach were factors to be considered in determining whether General Counsel carried the burden of showing that the discharge was for the purpose of interfering with rights accruing to Grunder under Section 8(a) (3) and (1) of the Act. Another factor to be considered was General Manager Kelley's testimony that if Grunder had rectified his error on Friday instead of on Saturday as he attempted to do, he would not have been discharged. The Trial Examiner treated these factors as a basis for an inference that the discharge was because of Grunder's union activity and that the reason given for his discharge was a mere pretext. The Board adopted this view. We cannot say that the basis for the inference is insufficient or that there is not substantial evidence of record pointing toward an unlawful motive—antiunionism—as the reason for the discharge. NLRB v. I. V. Sutphin-Atlanta, Inc., 5 Cir., 1967, 373 F.2d 890.

There are four additional employees involved under the Section 8(a) (3) and (1) heading. These employees came to work at the height of the union campaign clothed in T-shirts bearing the union insignia. A female employee threatened to tear the shirt from the back of one of these employees. The foreman, fearful of violence, sent two of the employees home to change shirts and told the other two to get out of the mill. Two of the employees thought that they had been discharged. The plant manager called company counsel for advice in the matter and was told that the employees were within their right in exhibiting the union insignia in such manner and that the employees should be recalled. See the following cases holding that union insignia may be worn by employees absent special circumstances not here involved. Republic Aviation Corp. v. NLRB, 1945, 324

U.S. 793, 802, n. 7, 65 S.Ct. 982, 89 L.Ed. 1372; Brewton Fashions v. NLRB, 5 Cir., 1966, 361 F.2d 8, 17; NLRB v. Floridan Hotel of Tampa, Inc., 5 Cir., 1963, 318 F.2d 545, 547. The employees were immediately recalled, reinstated and paid for the entire day although they had been gone some four hours. The plant manager apologized to them and apparently there the matter rested.

■ Respondent vigorously protests that part of the order which requires it to offer reinstatement to these four employees without prejudice to their seniority and other rights and privileges. The tenor of the argument is that the Board seeks the last pound of flesh. This portion of the order does not reach the level of being punitive and there is authority for the position that the Board is taking. It rests on the idea that the abandonment by an employer of a practice condemned by the Act does not render the controversy moot, see NLRB v. Mexia Textile Mills, 1950, 339 U.S. 563, 70 S.Ct. 826, 94 L.Ed. 1067; NLRB v. Mayer, 5 Cir., 1952, 196 F.2d 286, 290, nor dissipate the effect of the condemned practices to the extent of obviating the need for a remedial order. NLRB v. Daylight Grocery Company, 5 Cir., 1965, 345 F.2d 239, enforcing Daylight Grocery Company, 147 NLRB 733, 734–738 (1964). In Mexia Textile Mills, the Supreme Court stated that " * * * A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree."

■ There was some discussion on oral argument regarding the breadth of the order with respect to future violations, cf. NLRB v. Southwire Company, 5 Cir., 1965, 352 F.2d 346; Southwire Company v. NLRB, 5 Cir., 1967, 383 F.2d 235 [dated August 21, 1967]; and see NLRB v. Express Publishing Company, 1941, 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930, but this suggestion comes too late. No specific exception was filed to the breadth of the order. See NLRB v. Local 476, United Association of Journeymen, etc., 1962, 368 U.S. 401, 82 S.

Ct. 423, 7 L.Ed.2d 382. Cf. NLRB v. Safway Steel Scaffolds Company of Georgia, 5 Cir., 1967, 383 F.2d 273 [dated September 7, 1967], on rehearing 383 F.2d 273 [dated October 24, 1967], where a proper exception was filed.

The order will be enforced.