**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PATTERSON MENHADEN CORPORATION, d/b/a Gallant Man, and Fletcher Miller, Agent, Surprise, Inc., d/b/a Surprise, and Fletcher Miller, Agent, Respondents.**

No. 24286.

United States Court of Appeals
Fifth Circuit.

Feb. 2, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Francis Flannery, Atty., N. L. R. B., Washington, D. C., for petitioner.

C. Dale Stout, Kullman & Lang, New Orleans, La., for respondents.

Before GEWIN, BELL and AINSWORTH, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The Board seeks enforcement of its order as amended finding that the Respondents had violated § 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (3), (1). The alleged violation arises out of the failure to rehire the majority of the crew of a fishing boat after they had voted overwhelmingly for union representation.

Respondents are two Louisiana corporations engaged in the operation of fishing boats in the Menhaden fish industry and one of their captains, Fletcher Miller, their agent. The corporations select captains for each of their boats. They pay the wages of the crew but the captain has final authority in selecting the crew. The crew here, in the main, had worked with Captain Miller for many years.

Three questions are presented. First, Respondents urge that the order should not be enforced by the court because they have already fully complied with its terms. Second, they assign error on the action of the Board in finding that the two corporate Respondents constituted a single employer in the circumstances of the case, and that Captain Miller was at all material times their agent. Third, the substantive violation is contested. We enforce.

Fletcher Miller had served Respondent Patterson Menhaden Corporation as a captain for sixteen years. His method of obtaining a crew was rather informal but generally consisted of telling each man at the end of the fishing season that he would see them next year. Also during the Christmas season the crew members would call on him at his home for the purpose of obtaining loans. This served as an affirmation of their employment for the coming season. In addition to the wages and bonus paid each member of the crew by the corporate Respondents, Captain Miller had a practice of supplementing the pay of some members of the crew out of his own earnings. The catches made by Captain Miller and his crew were among the highest in the industry.

Miller was captain of Respondent Patterson Menhaden's boat "Gallant Man" in 1963. A union election was held aboard the boat during the last week of the fishing season and the union prevailed. The Trial Examiner credited evidence which showed that a few days before the election Miller assembled the crew and told them, *inter alia,* that he would not fish a union boat, and if they joined the union, he would get a whole new crew. Miller also stated that they should not seek Christmas loans because he wanted nothing to do with union men. The Board held that these pre-election statements could not constitute an 8(a) (1) violation since they occurred more than six months before the charge was filed. 29 U.S.C.A. § 160(b). They were properly used, however, as background evidence to corroborate other evidence adduced with respect to the pending and viable charges which pending charges might in and of themselves

constitute an unfair labor practice depending on employer motive. Cf. Local Lodge No. 1424, International Ass'n of Machinists v. N.L.R.B., 1960, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832; N.L.R.B. v. Stafford Trucking, Inc., 7 Cir., 1967, en banc, 371 F.2d 244, 246–247. When the season ended, Miller made no comment regarding work for the next year.

In 1964 Miller became captain of the Surprise, a boat owned by Respondent Surprise, Inc., a Louisiana corporation having the same ownership and officers as Patterson Menhaden Corporation and the same operations and management arrangements as those applicable to the Gallant Man. The construction of the Surprise was completed after the close of the 1963 fishing season. The Gallant Man was moved to another port and assigned to a different captain. Captain Miller hired only four of his 1963 crew to work aboard the Surprise. Two of these had not voted in the union election held on the Gallant Man. One of the others was his brother-in-law. Fourteen members of the Gallant Man crew were not hired.

■ The evidence is abundant to support the finding that these fourteen crew members were not hired by Captain Miller for part or all of the 1964 season because of their union activity on the Gallant Man. Without detailing all of the evidence it appears that some of these crew members were told variously that Captain Miller had no boat for the 1964 season and that he had quit the Gallant Man because he did not want a union boat. Not every 1963 crewman applied for a job on the Surprise but the inference is clear from what was said to those who did apply that the others could have believed that applications on their part would have been futile. The futility was, in fact, proven in the case of those of the fourteen who did apply. Moreover, the record sustains the finding that each of the fourteen was available for employment on the Surprise and willing and able to work except for the impression conveyed to them by Captain Miller that they would not be so employed.[1] Ten of these employees sought employment in April 1964 through a union representative. The season began in May. Several of the group were later employed for part of the season.

■ The Board order requires those members of the group of fourteen who have not been rehired to be offered immediate reinstatement by Respondents and that all of the fourteen be made whole for any loss of earnings. It appears without dispute that Respondents have complied with the order and they assert that there should be no court enforcement for this reason. It is settled that the compliance does not render the case moot and that the Board is entitled to a court decree notwithstanding compliance. The Supreme Court has held in a similar situation that: " * * * A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." N.L.R.B. v. Mexia Textile Mills, Inc., 1950, 339 U.S. 563, 567, 70 S.Ct. 826, 829, 94 L.Ed. 1067; N.L.R.B. v. Lone Star Textiles, Inc., 5 Cir., 1967, 386 F.2d 535.

■ There is no merit in the contention that the two Respondent corporations did not constitute a single employer for the purpose of the Act and that Captain Miller was not the agent of both. The stockholders in each corporation were the same. Corporate stockholdings were in the same ratio. The corporations had the same officers in every position. They were in identical businesses and their operation procedures were the same. This is sufficient to make out a single employer when coupled with the fact that the role of Captain Miller as part of man-

---

1. One employee, Broussard, testified that he was in California during Christmas and did not apply for his job for that reason. He did not account for not applying upon his return and actually applied to no avail in April. The Board was warranted in including him in the group of fourteen.

agement was also the same in each corporation. In addition, the facts show without dispute that he was the agent of the respective corporations at all material times. It is a fair inference from the facts that he was the joint agent of the corporate Respondents and this bolsters the holding that they be treated as a single employer. Cf. N.L.R.B. v. W. L. Rives Company, 5 Cir., 1964, 328 F.2d 464, 468, on the question of treating two corporations as a single employer under the Act.

The record considered as a whole supports the findings and conclusion that Respondents violated §§ 8(a) (3) and (1) of the Act by the refusal to hire the crew members in question for the 1964 season and that this refusal was because of the protected union activity theretofore engaged in by these crewmen.

The order will be

Enforced.