**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**John ROONEY, David Hinman and Beverly Foster, d/b/a Rooney's At The Mart, Respondents.**

**No. 80–7332.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1981.

Decided Feb. 25, 1982.

---

Margery Lieber, Atty., N.L.R.B., Washington, D. C., argued, for petitioner; Robert G. Servell, Washington, D. C., on brief.

Matthew D. Ross, Brundage, Davis, Frommer & Jesinger, and Robert M. Cassel, Specter, Berman, Cassel & Carter, San Francisco, Cal., argued, for respondents; Charles Klinedinst, Petit & Martin, San Francisco, Cal., on brief.

Before SNEED and BOOCHEVER, Circuit Judges, and TAKASUGI,* District Judge.

BOOCHEVER, Circuit Judge.

We affirm the National Labor Relations Board's (NLRB) decision that Rooney's at the Mart (Rooney's) anti-button policy was discriminatorily applied, but find that the NLRB's order is overly broad. We also hold that the NLRB erred in finding that Rooney's committed an unfair labor practice by promulgating and enforcing (1) an allegedly invalid oral no-solicitation rule; and (2) a facially valid, but allegedly improperly motivated, written no-solicitation rule.

_____

* Honorable Robert M. Takasugi, United States District Judge for the Central District of Cali-

## I
### No-Solicitation Rule

On May 16, 1978, Margaret Brickley, a waitress employed by Rooney's, distributed union literature to co-workers in the dining area of the restaurant, allegedly causing work disruptions. David Hinman, one of her employers, advised her "not to solicit on my time." Brickley retorted that she had clocked out. This was pursuant to a rule that employees clock out even for paid breaks. Hinman asked the employee Brickley was soliciting if he were on the clock. When the employee responded affirmatively, Hinman declared, "Peggy, you will not solicit my employees on my time." On the following day, when she was seen distributing literature to an employee working in the dining room, a written reprimand was delivered to Brickley containing a facially valid statement of her rights under the no-solicitation rule.

In *Essex International, Inc.*, 211 NLRB 749 (1974), the Board distinguished rules barring solicitation during "working time" from those barring solicitation during "working hours." The former rules are presumptively valid. The latter are presumptively invalid because they are too readily susceptible to an overly broad interpretation. As the Board stated, "working hours" are normally understood to denote the period "from the time [employees] 'clock in' or begin their workshift, until the time they 'clock out,' or end their work shift." *Id.* at 750.

In *Florida Steel Corp.*, 215 NLRB 97 (1974), the Board found the term "company time" analogous to "working hours." A no-solicitation rule applying to "company time," therefore, was presumptively invalid.

The parties in this case dispute whether the employer's use of the phrase "my time" is more analogous to "work time," and therefore presumptively valid, or to "company time," and therefore presumptively

fornia, sitting by designation.

invalid. "Both parties are overly insistent upon semantics. The ultimate question is whether the employer's actions ... interfered with the organizational rights of employees under the Act." *NLRB v. Roney Plaza Apartments*, 597 F.2d 1046, 1048–49 (5th Cir. 1979).

The Board should look, and in the past has looked, at the entire context of the employer's statements. Many of the facts relevant to such an inquiry, primarily those relating to the employee's actual interpretation of the statements, are either omitted or only casually referred to in the Board's present decision.

The analysis in *Essex* did not halt at the articulation of the "work time"/"work hours" distinction. The Board looked further to see how the equivocal "work hours" words were actually understood by the employee. When it concluded that the words were understood not to apply to break time, it found the invalidity presumption to be rebutted. Likewise, in *Aircraft Hydro-Forming, Inc.*, 221 NLRB 581 (1975), an employer's use of the term "company time" was found harmless because the employee's immediate response to the warning indicated that he understood the rule's proper limits.

It is clear that Brickley understood the initial admonition as applying to solicitation during periods when either she or the other employees were actually on duty. This understanding was verified by the written reprimand. Subsequent clarification may be considered in evaluating no-solicitation rules. *E.g., Lebanon Apparel Corp.*, 243 NLRB 136 (1979) (considering subsequent oral announcement).

The Board found that the written reprimand was improperly motivated. Despite the fact that the letter was facially legal, it was deemed to have been issued with discriminatory intent because: (1) it occurred at the outset of an union organizational campaign; (2) it was addressed to the prime union adherent; (3) it was triggered by noncompliance with an invalid rule; and (4) the employer practiced a see-no-evil aloofness concerning antiunion petitions. Each of the four factors will be addressed in turn.

*Roney Plaza Apartments* contains the best statement of the rules pertaining to the first factor, the coincidence of the promulgation of a no-solicitation rule and a union campaign. Such a promulgation, while not *per se* discriminatory, is strong evidence of discriminatory intent. This evidence may be countered with evidence that the solicitation brought about substantial work disruption for the first time. *Roney Plaza Apartments*, 597 F.2d at 1049. In the present case, the employers testified that Brickley's activities created a disturbance and that she was the first employee to do so.

The second factor, that the rule was stated to the lead organizer does not add much to the first factor. In *Borden Co.*, 142 NLRB 364 (1963), the Board held that such a method of promulgation, although not ideal, was not an unfair labor practice. In *Borden*, the rule was stated to the union committee chairman at the outset of his activities.

Third, as previously indicated, the pronouncement of the no-solicitation rule was valid.

Finally, there is no "substantial evidence" supporting the allegation of "see-no-evil" aloofness. There is no evidence that Rooney's was aware of any other solicitation by or to employees while at work. Accordingly, there was no occasion to warn others. Under these circumstances, no inference may be drawn of improper motivation.

## II

### The Antibutton Policy

■ There is evidence that large buttons or labels were worn by other employees on at least three occasions without management protest and that at least on one occasion with knowledge of a supervisor. The NLRB's decision that the employer discriminately applied its antibutton policy to Brickley is therefore supported by the evidence.

On its face, however, the Board's order would bar any antibutton policy. Although employees generally have a right to wear union buttons, *Pay'n Save Corp. v. NLRB*, 641 F.2d 697, 701 (9th Cir. 1981), this right has been limited in certain situations. *See generally Florida Hotel*, 137 NLRB 1484 (1962). For instance, in *NLRB v. Harrah's Club*, 337 F.2d 177, 180 (9th Cir. 1964), this circuit recognized that legitimate concern over the appearance of employees providing direct service to the public may justify restrictions on the right to wear buttons. *Harrah's Club*, however, expressly did not deal with a situation where the buttons were worn in furtherance of a "purpose protected by the act—i.e., collective bargaining or other mutual aid or protection." *Id.* at 179. Nevertheless, a large button with a blatant message could well be offensive to patrons of certain establishments. *See NLRB v. Harrah's Club, supra; Davison-Paxon Co. v. NLRB*, 462 F.2d 364 (5th Cir. 1972).

We believe that a business such as the restaurant involved here, that caters to theatre patrons, may place reasonable restrictions on the type of buttons worn, as long as such restrictions are not applied discriminatorily and do not unreasonably bar the wearing of appropriate union insignia.

Accordingly, the Board's order should be modified so as to prohibit only unreasonable restrictions on the types of buttons or insignia that may be worn.

The matter is remanded to the Board for modification of its order in accordance with this decision. We order enforcement of this order as so modified.

REVERSED and REMANDED.