NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MALTA CONSTRUCTION
COMPANY, Respondent.

No. 86–8059.

United States Court of Appeals,
Eleventh Circuit.

Dec. 22, 1986.

Elliott Moore, N.L.R.B., Office of the General Counsel, Robert Bell, Linda Dreeben, Washington, D.C., for petitioner.

Robert O. Sands, Atlanta, Ga., for respondent.

Frank B. Shuster, Atlanta, Ga., for Local 926.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

ALLGOOD, Senior District Judge:

The National Labor Relations Board (the Board) seeks enforcement of its order issued on October 22, 1985, against Malta Construction Company (the Company) for violations of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) (the Act.).[1] The question presented is whether the order has an adequate evidentiary foundation. We hold that it does and that it will be enforced.

The International Operating Engineers Local 926 (the Union) filed charges of unfair labor practices against the Company following the discharge of two employees during a union campaign. Following a hearing, an administrative law judge (ALJ) recommended sustaining the allegations that Paul Hoback's discharge violated the Act, but dismissing the allegations concerning Johnny Lambert's discharge. Both the Company and the General Counsel filed exceptions to the findings.

After reviewing the findings of the ALJ, the Board agreed with the recommendation regarding Hoback's discharge and in a 2–1 decision concluded the Company violated Section 8(a)(3) also in discharging Lambert. The Board ordered the Company to cease and desist discharging employees for engaging in protected activities and interfering with, restraining, or coercing employees in the exercise of guaranteed rights. The Board ordered the Company to offer Hoback and Lambert their former or equivalent jobs, plus any lost earnings with interest. The Company was also ordered to expunge the personnel files of Hoback and Lambert of any information regarding the discharge. The Board is now petitioning this court for enforcement of that order. Malta opposes enforcement of the order and contends the decision is not supported by substantial evidence and is contrary to established law.

■ In reviewing an order of the Board, we are bound by the Board's factual findings if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *City Cab Co. of Orlando, Inc. v. NLRB*, 787 F.2d 1475 (11th Cir.1986); *Weather Tamer, Inc. v. NLRB*, 676 F.2d 483 (11th Cir.1982). The Board has been given the primary responsibility for striking a balance between asserted business justifications and the invasion of employee rights in light of the Act. *NLRB v. Fleetwood Trailer Co., Inc.*, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967).

The Company is a contractor engaged in the construction of overpasses and bridges on Interstate 675 south of Atlanta, Georgia. Soon after the Company began work on the I–675 project, in June, 1983, the equipment operators and mechanics began a campaign to organize a union. On July 29, 1983 the Union filed a petition with the Board's Regional Office for an election. During the campaign the Company actively opposed the Union.

On August 8, 1983 Johnny Lambert placed a union sticker on the crane he operated and on both his personal hardhat and his company issued hardhat. Employees had been issued orange hardhats and instructed to wear them when they were not in the cabs of their machines. Dennis Fleeman, one of the superintendents on the job, told Lambert to remove the sticker from the crane and the company hardhat. Lambert removed the sticker from the crane but refused to remove the one on the

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge, Northern District of Alabama, sitting by designation.

1. 29 U.S.C. § 158. Unfair Labor Practices.
   (a) It shall be an unfair labor practice for an employer—

   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [29 U.S.C.S. § 157];

   (3) by discrimination in regard to hire or tenure of employment to encourage or discourage membership in any labor organization.

hardhat. The next day Fleeman saw Lambert wearing his personal hardhat and reported both incidents to the project manager, Gene Root. Root and Fleeman then consulted the general manager, George Fleet, who told them that the company policy was for all employees to wear only the company issued hardhat and it was to be kept free of any kind of sticker except the company insignia. When Fleeman and Root told Lambert of the policy, Lambert agreed to wear the company hat, but refused to remove the union sticker. Root warned Lambert he would be fired if he refused to remove the sticker. Lambert told Root he thought he had a right to wear the sticker, refused to remove it and was fired.

Paul Hoback was also actively involved in the union campaign. Hoback wore union insignias, handed out union materials, talked to other employees about the union and testified for the union in a hearing before the Board on the Union's representation petition.

Hoback was discharged for "deliberate interference with production and refusing work assignment/follow instructions." On Saturday, September 17, Hoback was given a work assignment by superintendent Burley Bonner. During the morning Hoback took a water break, during which he discussed the union campaign with Eric Bonner, a laborer on the crew and the son of the superintendent. Later he stopped his machine to help Ronnie Simmons who had gotten his front-end loader stuck. Bonner returned to the site several times during the morning and again shortly before noon. Bonner was generally dissatisfied with the job Hoback was doing and the amount of time it was taking. Bonner's son told his father that Hoback had stopped his machine to discuss the union. On Monday, Bonner told Fleet that Hoback had been slow on Saturday and had stopped his machine to talk to Simmons. Hoback was

fired that day with no further investigation. Hoback had never been warned nor disciplined for extra long breaks or wasting time before the day he was fired.

The wearing of union insignia by employees, particularly during an organizational campaign, is fairly typical behavior and has been held to be protected under § 7.[2] "The right of employees to wear union insignia at work has long been recognized as a reasonable and legitimate form of union activity, and the respondent's curtailment of that right is clearly violative of the Act." *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1944), quoting the NLRB decision, 51 NLRB 1186.

Section 8(a)(1) of the Act specifically makes it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of guaranteed rights. Based on this section, courts have repeatedly held that absent special circumstances to maintain production or discipline or insure safety, interfering with an employee's right to wear union insignia constitutes an unfair labor practice. *Davison-Paxon Co., Div. of R.H. Macy & Co. v. NLRB*, 462 F.2d 364 (5th Cir.1972); *NLRB v. Lone Star Textiles, Inc.*, 386 F.2d 535 (5th Cir.1967); *Brewton Fashions, Inc. v. NLRB*, 361 F.2d 8 (5th Cir.1966); *cert denied* 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966); *NLRB v. Floridan Hotel of Tampa, Inc.*, 318 F.2d 545 (5th Cir.1963). The burden of proving an unfair labor practice is always on the NLRB, but once the existence of presumptively invalid rules is shown, the employer has the duty of going forward with the proof and showing special circumstances to justify the rule.

The Company argues that the Board failed to fairly balance the competing interests of the employer and employees as required by *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). The Company points out that employees were allowed to display union

**2.** 29 U.S.C. § 157. Rights of Employees.
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

insignia on their person and property without restriction, but that legitimate business concerns made the restrictions on the hardhats necessary. The special circumstances as put forth at the hearing were: (1) to make it easy for supervisors to distinguish Malta employees from other companies employees; (2) so operators and truck drivers could spot employees working around the equipment; and (3) because construction workers come in contact with the public and the Company wanted to protect its image. The Company argues that it was not motivated by an anti-union attitude in requiring the removal of the sticker, but by legitimate business concerns. The Board ruled that the Company failed to show that the complete ban of union insignia on hardhats was necessary for either identification or safety. As to the third justification for the ban, the Board found that employees have so little contact with the public that it does not justify a special circumstance.

In its decision, the Board pointed out that there can be legitimate reasons for rules prohibiting union insignia on hardhats, but that Malta had not demonstrated such special concerns. *See, Andrews Wire Co.,* 189 NLRB 108 (1971); *Standard Oil Co. of California,* 168 NLRB 153 (1967); and *Brown Manufacturing Corporation,* 235 NLRB 1329 (1978).

Section 7 of the Act protects the rights of employees to engage in union activities and Section 8(a)(3) makes it unfair labor practice for an employer to discharge an employee because of his protected union activities. *NLRB v. United Sanitation Service,* 737 F.2d 936 (11th Cir.1984). In proving a case of unlawful discharge, if the General Counsel shows that an employer's opposition to union activity was a motivating factor in the employer's decision, an unfair labor practice is established unless the employer can prove as an affirmative defense, that it would have discharged the employee even in the absence of the protected activity. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), affirming *Wright Line, Inc.,* 251 NLRB 1083.

■ Paul Hoback was fired ostensibly because he failed to follow instructions and interfered with the production. Hoback had a history of taking long breaks and wasting time, but he had never been warned nor disciplined for it. He was not warned the day he was fired that his behavior could result in some form of discipline. In fact, there was nothing different about Hoback's behavior that day or the company's reaction to it, except that Hoback was talking about the Union. The question of motive is a factual matter for the Board's determination based on all the facts and circumstances. As in many cases there is evidence of both a lawful and an unlawful motive. While management has a lot of freedom in hiring and firing its employees, it cannot fire when the real motive is to discriminate against pro-union employees. Because direct proof of motive is often impossible to obtain, circumstantial evidence must be relied upon to prove a violation of Section 8(a)(3). Based on all of the circumstances the Board reasonably concluded that the asserted reasons for discharge were not the real ones and that the Company failed to show that they would have fired Hoback absent the Union conversation.

■ After a careful review of the entire record, the court is of the opinion that the decision of the Board is supported by substantial evidence and that the proper legal standards were applied. Accordingly, the petition for enforcement of the Board's order is GRANTED.

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

Because of the deference due to decisions of the NLRB, I concur in the court's judgment as it deals with Mr. Hoback. Notwithstanding the deference due to NLRB decisions, I conclude that Mr. Lambert was lawfully disciplined by his employer; and I dissent from the court's judgment as it deals with Mr. Lambert.

The issue in this case is not whether employees can wear union insignia at the jobsite; they can. Nor is the issue whether

employers can always prevent employees from using company property for union purposes; they cannot. The issue is whether the NLRB evaluates a case properly when it gives no weight to property rights in balancing the rights of employees and employers. In my view, the answer to that question is clearly "no."

In this case the question is not one of fact, but of a proper balance to be struck between conflicting interests. As the Supreme Court said in *NLRB v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965):

> Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.

Instead of balancing the employees' interest in organizing against the company's property interest, the NLRB and the majority here give no weight to the fact that the company owned the safety helmets. All the precedents cited by the NLRB involving union insignia[1] are distinguishable on this fact: none involve union insignia displayed on company-owned safety equipment where the union was not discriminated against and the wearing of union insignia was generally allowed. Moreover, the NLRB at oral argument bluntly contended that the company's property interest in the safety helmets makes no difference. This argument goes too far and is unjustified by judicial precedent or by Congressional intent.[2] Although company ownership of the helmets may not be, in and of itself, the determinative factor, surely it counts for something. It is a circumstance that must be given substantial weight.

As a general proposition, I believe that a company has a right to preserve and control its own property.[3] If a company adopts a rule in the exercise of its property rights without any intention of curtailing union activities, its employees face a significant burden of proving that that rule infringes on their rights. They might meet that burden, for example, by proving that the rule effectively closed all available forums by which employees could show their union allegiance. In the instant case, no one even contends such a thing.

---

1. The NLRB appears to have a history of overreaching on this point. Actually, the NLRB has rarely, if ever, met with success in court concerning display of union insignia where the employer's rule was not a total ban. *See Burger King Corp. v. NLRB*, 725 F.2d 1053 (6th Cir. 1984) (enforcement of NLRB order denied—union insignia on company-owned uniform); *Midstate Tel. Corp. v. NLRB*, 706 F.2d 401, 403 (2d Cir.1983), (enforcement of NLRB order denied—insignia on employees' own clothing); *Fabri-Tek, Inc. v. NLRB*, 352 F.2d 577 (8th Cir. 1965) (enforcement of NLRB order denied—insignia worn on employee's clothing); *NLRB v. Harrah's Club*, 337 F.2d 177 (9th Cir.1964) (enforcement of NLRB order denied—union insignia on company owned uniforms); *Davison-Paxon Co. v. NLRB*, 462 F.2d 364 (5th Cir.1972) (enforcement of NLRB order denied); *cf. NLRB v. Floridan Hotel of Tampa, Inc.*, 318 F.2d 545 (5th Cir.1963) (total ban on wearing membership insignia not allowed). The present case seems stronger for the employer than any of these.

2. In listening to the NLRB's lawyer orally argue this case and equate this case with one in which the employee owned the helmet, I could not help but note how far we have come. *"Liberty, property, and no stamps!* It had been the first slogan of the American Revolution."* C. Bowen, *Miracle at Philadelphia, The Story of the Constitutional Convention May to September 1787* at 70 (1966). I know that our views about property rights have changed since the nation was founded, but it still concerns me to hear how little such rights seem to mean to some governmental agencies.

3. There are, of course, a number of cases in which employees have been allowed to use the employer's real property, i.e., jobsites, to distribute organizing literature. Freedom of employees to communicate with one another on the jobsite is viewed as essential to their rights to organize; thus, property rights do not always prevail. But, the Supreme Court has made it plain that employer property rights are significant and due some protection. *See NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956) (reversing order of NLRB).

It is important that both parties agree that the underlying requirement that employees wear company-owned helmets was not motivated by anti-union sentiments. The rule requiring the wearing of company-owned · helmets predates the union organizational efforts and is designed to assure OSHA[4] compliance—a fact not contested by the NLRB. The NLRB does not dispute that such a step to assure OSHA compliance reflects a legitimate business interest. Furthermore, employees were allowed to display union insignia on their person just as they pleased except on the company's helmet. It is also undisputed that the company treated union decals no differently, certainly no worse, than any other decal on company helmets. "With the Company permitting ... various sizes and kinds of insignia to be worn, it cannot be maintained that the Company's rule prohibiting the wearing of decals [on hard hats] deprived the employees of the right to identify themselves with the Union for purposes of organizing other employees.... Certainly the rule in this case did not restrain or interfere with any employee's right to show his allegiance to other employees...." *Standard Oil Co. of California*, 168 N.L.R.B. No. 28 (1967). *Accord Andrews Wire Corp.*, 189 N.L.R.B. 108 (1971).

Because no weight was given to property rights, the balance that the NLRB struck here was erroneous. No judicial precedent supports giving property rights such short shrift. Moreover, Congress has never indicated any intention to ignore completely a property owner's interest in its personal property. Nor can it be maintained that the company's rule deprived its employees of any right to identify themselves with the union. This is a case where an employer required employees to wear a distinctive piece of employer-owned safety equipment, prohibited them from placing any sort of insignia on that equipment, enforced that rule without regard to the content of the insignia, and placed absolutely no prohibi-

tion on the display of union insignia on employee clothing.

As a matter of law, I believe the NLRB's evaluation of the relative strength of the competing interests was wrong, unsupported, arbitrary, and irrational; and I agree with the administrative law judge who tried this case and with the Chairman of the NLRB, who dissented from the Board's decision, that the no-decal-on-helmets rule is not an unfair labor practice. Accordingly, Malta's termination of Mr. Lambert's employment was justified.

I would decline to enforce the NLRB order to the extent that it deals with Mr. Lambert's case.

---

4. Occupational Safety & Health Act, Pub.L. 91–596, 84 Stat. 1590 (1970); *see also* 29 U.S.C.A. sec. 655 (1985). The NLRB has upheld no-de-cal-on-helmets rules on safety grounds. *See Andrew Wire Corp.*, 189 N.L.R.B. 108 (1971).