PIONEER HOTEL, INC., *d/b/a* Pioneer
Hotel & Gambling Hall, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 97–1718.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1998.

Decided July 9, 1999.

Norman H. Kirshman argued the cause for petitioner. With him on the briefs was Gary G. Branton.

David A. Seid, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, John D. Burgoyne, Acting Deputy Associate General Counsel, and Fred L. Cornnell, Jr., Supervisory Attorney.

Before: WALD, SILBERMAN and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Pioneer Hotel, Inc. petitions for review of a decision and order of the National Labor Relations Board ("NLRB" or "Board"), concluding that Pioneer committed unfair labor practices in violation of sections (8)(a)(1) and (3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), (3). *See Pioneer Hotel, Inc.*, 324 N.L.R.B. 918, 1997 WL 693030 (1997). The Board cross-applies for enforcement.

With two exceptions, we grant the cross-application for enforcement and deny the petition for review.

Pioneer operates a hotel, a casino, and three restaurants in Laughlin, Nevada. In late 1994 or early 1995, a union[1] began an effort to organize the company's employees. An Administrative Law Judge (ALJ) determined, and the NLRB agreed, that during the course of the union's campaign Pioneer committed unfair labor practices by: (1) terminating supervisor Thomas Grace because he refused to commit an unfair labor practice; (2) interrogating employee Sheila Falk regarding her support for the union; (3) directing employees to remove their union buttons while at work; (4) denying employee James Guirey access to the employee dining room where he was circulating a petition; (5) reducing Guirey's work hours and then laying him off; and (6) suspending employee Anthony Zabala, reducing his work hours, and then laying him off. *Id.* at 918, 930.

The ALJ concluded that the first four incidents violated section 8(a)(1) of the NLRA, and that the last two violated sections 8(a)(1) and (3). Section 7 of the NLRA, 29 U.S.C. § 157, guarantees employees "the right to self-organization, to form, join, or assist labor organizations, . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by section 7. Section 8(a)(3) makes it an unfair labor practice for an employer to discriminate "in regard to . . . tenure of employment or any term or condition of employment to . . . discourage membership in any labor organization. . . ."

 Our role in reviewing the NLRB's decision is limited. *Time Warner Cable v. NLRB*, 160 F.3d 1, 3 (D.C.Cir.

1998). "We must uphold the judgment of the Board unless, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by 'substantial evidence,' 29 U.S.C. § 160(e), (f), or that 'the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case.'" *International Union of Electronic, Electrical, Salaried, Mach. & Furniture Workers v. NLRB*, 41 F.3d 1532, 1536 (D.C.Cir.1994) (internal quotations omitted). We are also required to give "substantial deference to the inferences drawn by the NLRB from the facts." *Time Warner*, 160 F.3d at 3. For the reasons stated below, we conclude that the ALJ's first two determinations are not supported by substantial evidence, but that the remaining four are.

## I

 We begin with the Board's contention that Pioneer terminated supervisor Thomas Grace because he refused to commit an unfair labor practice. Although supervisors are not themselves protected by the NLRA, an employer violates section 8(a)(1) when it discharges a supervisor "for refusing to commit an unfair labor practice." *Automobile Salesmen's Union Local 1095 v. NLRB*, 711 F.2d 383, 386 (D.C.Cir.1983); *see also Marshall Durbin Poultry Co. v. NLRB*, 39 F.3d 1312, 1315-16 (5th Cir.1994). The gravamen of the Board's finding with respect to Grace is that Pioneer fired him because he, in turn, had refused to fire one of his employees for pro-union activities.

## A

Grace was the director of Pioneer's food and beverage department. According to his testimony, on June 20, 1995 he was told by Pioneer's human resources manager that corporate management wanted Anthony Zabala, an employee whom Grace knew

---

1. Local Joint Executive Board of Las Vegas Culinary Workers Union, Local 226 and Bartenders Union, Local 165, affiliated with Hotel Employees and Restaurant Employees International Union, AFL–CIO.

to be a union supporter, fired. *Pioneer Hotel*, 324 N.L.R.B. at 927–28; App. 604–05. Grace said he "wouldn't do that because Tony was a good employee...." He also said he did not care "what Chris Lowden.... [a]nd his prima donna self wanted," referring to a corporate manager who was the son of Pioneer's majority owner. Thereafter, instead of firing Zabala, Grace said he transferred Zabala to one of Pioneer's restaurants "to get him out of the line of fire." When Grace told the human resources manager what he had done, she replied, "I hope this little stunt doesn't cost you your job." 324 N.L.R.B. at 928; App. 605–09.

In July 1995, Pioneer's general manager announced he was resigning to move to another company. Grace applied for the position, but it went instead to Chris Lowden. Grace had frequently disparaged Lowden in front of other employees, calling him not only a "prima donna" but also a "spoiled little rich boy." 324 N.L.R.B. at 928; App. 1056. On August 2, 1995, Lowden decided to fire Grace. Lowden did so, he testified, because of Grace's poor performance and "lack of respect." 324 N.L.R.B. at 928; App. 970. Another Pioneer manager said Grace was fired as part of a "corporate restructur[ing]." 324 N.L.R.B. at 928; App. 1049.

The initial complaints filed by the NLRB's General Counsel did not list the dismissal of Grace as an unfair labor practice. Following Grace's testimony at the hearing, however, the Administrative Law Judge asked "whether there's any remedy that needs to be considered for" Grace. App. 617–18. At the end of that day's proceedings, the General Counsel moved to amend the complaints to charge that Pioneer terminated Grace for refusing to commit an unfair labor practice. Decision on Resp.'s Mot. to Reconsider at 2 (App. 54) [hereinafter Decision]. The ALJ granted the motion, and Pioneer filed a motion to reconsider.

The next day, the ALJ advised the parties that he had consulted "with a colleague" as to the best procedure to follow in ruling on the motion for reconsideration—that is, whether to rule immediately or to hold the issue until the parties had an opportunity to litigate the merits of the Grace charge. App. 853; Decision at 3 (App. 55). Although the ALJ did not name the colleague with whom he had consulted, the context of his statements strongly suggests he was referring to a fellow judge. *Id.*; *see also* App. 843, 858.

In its motion to reconsider, Pioneer argued that the proffered amendment was neither timely nor "closely related" to the charges in the original complaints. *See* 29 U.S.C. § 160(b); *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1020 (D.C.Cir. 1995). The ALJ found that the amendment was closely related and denied the motion. App. 53–57. Thereafter, Pioneer asked the ALJ to disqualify himself on the grounds that he had acted improperly by suggesting the amendment, by consulting with a colleague, and by otherwise displaying bias against Pioneer. The ALJ declined. *Id.* at 162. He subsequently found Pioneer to have committed an unfair labor practice by discharging Grace, *Pioneer Hotel*, 324 N.L.R.B. at 929, and the Board affirmed his rulings in all respects, *id.* at 918 & nn. 1, 2.

### B

Before reaching the merits of this unfair labor practice charge, we must consider Pioneer's threshold objections to the ALJ's actions and to the amendment of the complaints.

■ First, we find nothing improper about the ALJ's inquiry as to "whether there's any remedy that needs to be considered for" Grace. That query did not impermissibly cross the line between judge and advocate. *See NLRB v. Tamper, Inc.*, 522 F.2d 781, 789–90 (4th Cir.1975) ("[W]e do not doubt that the Administrative Law Judge in the exercise of his discretion may call attention to an uncharged violation....").

■ Second, we reject Pioneer's contention that the ALJ engaged in an improper ex parte communication by consulting with a colleague on "the correct procedure" for handling the Grace amendment. App. 853. Pioneer contends that such a consultation violated both the Administrative Procedure Act, 5 U.S.C. § 557, and the American Bar Association's *Model Code of Judicial Conduct*. In quoting the relevant provisions, however, Pioneer neglects to cite the clauses that limit their application. Although 5 U.S.C. § 557(d)(1)(C) does require an ALJ who makes "a communication prohibited by this subsection" to put it on the public record, the only prohibited communications are those with "interested person[s] outside the agency," *id.* § 557(d)(1)(A), (B).[2] Similarly, while the *Model Code of Judicial Conduct* bars ex parte communications, AMERICAN BAR ASS'N, MODEL CODE OF JUDICIAL CONDUCT Canon 3(B)(7) (1990),[3] it expressly excepts "consult[ation] with court personnel ... or with other judges," *id.,* Canon 3(B)(7)(c). And the NLRB's own ex parte rules, which Pioneer also inexplicably fails to cite, likewise only prohibit communications with "interested person[s] outside this agency." 29 C.F.R. § 102.126 (1998).

■ Third, we reject Pioneer's assertion that comments the ALJ made in his decision rejecting its motion for reconsideration evidenced prejudicial hostility toward one of Pioneer's counsel. Decision at 3 (App. 55). Although the ALJ could have been more restrained in his language[4]—an admonition that could on occasion apply to this court as well—there was nothing to suggest the kind of bias or partiality that requires judicial disqualification. *See Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The ALJ's decision did refer to an earlier

case in which Pioneer's attorney, at the time representing a different casino, also charged him with improperly crossing the line between judge and advocate. But the decision did no more than cite the NLRB's ruling in the case as evidence that judicial conduct like that at issue here does not improperly transgress that line. *See* Decision at 3 (App. 55) (citing *Sahara Las Vegas Corp.,* 297 N.L.R.B. 726, 727 n. 2 (1990)).

■ Finally, we consider the propriety of amending the complaints. This ·is a matter of consequence because without amendment, NLRA section 10(b), 29 U.S.C. § 160(b), would have barred the charge relating to Grace's firing as untimely. *See* Decision at 4 (App. 56). To determine whether an amendment was permissible, the ALJ asked whether the amendment and the initial complaints were "closely related." *Id.*; *see TIC–The Industrial Company Southeast, Inc. v. NLRB,* 126 F.3d 334, 339 (D.C.Cir.1997); *Drug Plastics,* 44 F.3d at 1020. To make that determination, the ALJ asked whether the amendment's allegations "(1) involve the same legal theory as allegations in the timely filed charges; (2) arise from the same factual circumstances; and (3) entail the same or similar defenses by the Respondent." Decision at 4 (App. 56). We have approved this test several times before, *see, e.g., TIC,* 126 F.3d at 339; *Drug Plastics,* 44 F.3d at 1021, and agree with the Board that it was satisfied in this case.

Grace was at one time the director of the department in which most of the unfair labor practices alleged in the complaints occurred. The October 1995 firing of Zabala, an employee of that department, was a central focus of the original complaints. *See infra* Part II. Part of the evidence

---

**2.** Pioneer also cites 5 U.S.C. § 554(d)(1), which bars ex parte consultation with "a person or party on a fact in issue." There is no suggestion that the ALJ consulted with his colleague on any question of fact.

**3.** *But see* MODEL CODE, Application § A n.3 (explaining that Model Code does not necessarily apply to ALJs).

**4.** He referred to allegations made by Pioneer's counsel as "scurrilous." Decision at 3 (App. 55).

that Pioneer fired Zabala for union activism in October was that it had unsuccessfully ordered Grace to fire Zabala for the same reason just a few months earlier. The amendment's charge was that Grace was fired for refusing to carry out that order. *Pioneer Hotel*, 324 N.L.R.B. at 927. Hence, the two allegations "arise from the same factual circumstances." And while the legal theories are not identical, they are closely related: both allege that Pioneer violated section 8(a)(1) by firing employees out of anti-union animus. Moreover, Pioneer asserts the same defense to both: each firing, at least in part, was assertedly due to a "corporate restructuring" plan.

This is not, then, a case like *Drug Plastics*, where the only connection between the amendment and the complaint was that the alleged conduct was part of the same "anti-union" campaign. 44 F.3d at 1020–21. Rather, in this case "th[e] amended allegation was properly allowed, because it shared a significant factual affiliation with the original charge." *TIC*, 126 F.3d at 339.[5]

### C

■ Although we agree with the ALJ and the Board that the complaints were properly amended to include Grace's termination, we cannot find substantial evidence to support the conclusion that Grace was fired "because he refused to commit unfair labor practices." *Pioneer Hotel*, 324 N.L.R.B. at 930 (emphasis added). Proof of such motivation is required to establish the Board's prima facie case. *See Marshall Durbin Poultry*, 39 F.3d at 1315–16; *Automobile Salesmen's Union*, 711 F.2d at 386. *See generally NLRB v. Transportation Management Corp.*, 462 U.S. 393, 398–402, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving *Wright*

*Line*, 251 N.L.R.B. 1083 (1980)); *TIC*, 126 F.3d at 337. The entirety of the evidence on this point is Grace's own testimony, not one word of which states that Grace was told to fire Zabala because of his union activities or that Grace refused to do so because he thought it would constitute an unfair labor practice. To the contrary, Grace was told no more than that corporate management "wanted Tony fired." App. 605. And besides disparaging Chris Lowden, Grace said no more than that he "wouldn't do that because Tony was a good employee...." *Id.*; *see id.* at 606–07. Since the Board is unable to show that Grace's termination was motivated by protected conduct, we have no need to consider whether Pioneer could rebut a prima facie case of anti-union animus—for example, by demonstrating that Grace would have been fired in any event because he had publicly belittled the person who ended up as his boss. *See TIC*, 126 F.3d at 338; *see also Transportation Management*, 462 U.S. at 401–03, 103 S.Ct. 2469.

### II

In this Part, we consider the remaining unfair labor practice charges against Pioneer.

■ The first charge is that Grace—ironically, the same supervisor who allegedly risked his job to avoid unlawfully terminating Zabala—did himself commit an unfair labor practice by interrogating another employee about the union. Such an interrogation violates the NLRA only "if, under all the circumstances, it reasonably 'tends to restrain, coerce, or interfere with rights guaranteed by the Act.'" *Perdue Farms, Inc. v. NLRB*, 144 F.3d 830, 835 (D.C.Cir.1998) (quoting *Rossmore House*, 269 N.L.R.B. 1176, 1177 (1984)).

We find this charge unsupported by substantial evidence. The sum and substance

---

5. Pioneer also claimed in its briefs that the amendment violated its right to due process, because the General Counsel had not moved to amend until after he rested his case in chief. Pioneer abandoned that point at oral argument, however, conceding that because the hearing was recessed for two months, it had an opportunity to prepare to rebut the new allegation.

of the charge is a single conversation Grace initiated with employee Sharon Falk by saying: "I know that you're in the union and it's okay with me...." *Pioneer Hotel*, 324 N.L.R.B. at 930; App. 601. He then asked about a "problem," whether "my management people, Mary and me and Chef Paul and those people, have ... done something to make you unhappy with us." Falk replied, "No, it isn't you guys, it's them.... [t]he Pioneer, the Lowdens." Grace said, "Well, just so it's not something we're doing wrong," and Falk again confirmed, "It isn't." According to Grace, a final "[t]hank you ... ended it." *Id.*

This brief exchange does not evidence a tendency to coerce. Without going into the case law in detail, it is enough to say that most of the factors upon which both the Board and the courts rely to find coercion are absent here. *See Perdue Farms*, 144 F.3d at 835. Grace did not "appear to be seeking information on which to base taking action against" Falk. *Id.* He was not high in the company hierarchy, *id.*, and according to the NLRB itself, was personally protective of his employees' rights under the NLRA. The conversation did not occur in "an atmosphere of 'unnatural formality.'" *Id.* Indeed, "natural informality" would be a better description, as it apparently occurred off to the side in the employee dining room. App. 600. And there is no suggestion that Falk's reply was not truthful. 144 F.3d at 835.

▮▮▮ The Board fares better with respect to the remaining charges. The record supports its contention that directing employees to remove their union buttons constituted an unfair labor practice. The right to wear union buttons or other insignia while at work is generally protected by the NLRA. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801–03 & n. 7, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). In the absence of special circumstances, an employer's prohibition against wearing such insignia violates section 8(a)(1). *See,*

*e.g., NLRB v. Malta Constr. Co.*, 806 F.2d 1009, 1011 (11th Cir.1986).

Pioneer's dress code originally barred only the wearing of "stickers or pins" on employee name tags. *Pioneer Hotel*, 324 N.L.R.B. at 922 (quoting NLRB Ex. 60). In August 1995, the union sent Pioneer a letter listing the names of its in-house organizing committee. *Id.* At approximately the same time, the company modified its dress code by banning "pins, stickers, [and] buttons" altogether. *Id.* (quoting NLRB Ex. 8). Just days later, nine or ten employees were sent home for refusing to remove buttons identifying them as union "committee leaders." *Id.* Pioneer offered no evidence to justify the ban below, *see id.* at 923, and does not seriously defend it here. Instead, Pioneer relies principally on the contention that it repudiated its action and allowed the employees to return to work without loss of pay. The record, however, supports the ALJ's conclusion that Pioneer's repudiation was ambiguous and inadequately publicized, and hence ineffective under the case law. *Id.*; *see General Indus. Employees Union, Local 42 v. NLRB*, 951 F.2d 1308, 1312 n. 1 (D.C.Cir.1991) (citing *Passavant Mem'l Area Hosp.*, 237 N.L.R.B. 138, 138–139 (1978)); *Wilson Trophy Co. v. NLRB*, 989 F.2d 1502, 1511 (8th Cir.1993).

▮▮▮ We also find substantial evidence to support the conclusion that Pioneer violated section 8(a)(1) by denying James Guirey access to the employee dining room when he attempted to circulate a petition there. Pioneer offers two principal defenses to this charge: that Guirey was in violation of a company policy barring employees from the dining room more than thirty minutes before their shifts; and that Guirey was never actually removed from or ordered to leave the dining room. As to the first, we find substantial evidence to support the ALJ's findings both that no such company policy existed, and that even if one did, the security guards enforced it selectively against Gui-

rey's petitioning alone. *See Pioneer Hotel,* 324 N.L.R.B. at 926; App. 693–95, 772–73; *see also NLRB v. S.E. Nichols, Inc.,* 862 F.2d 952, 958–59 (2d Cir.1988) (affirming finding of unfair labor practice when company enforced its rules in discriminatory fashion). And while it is true that Pioneer's security guards never physically removed Guirey from the dining room, their repeated admonitions effectively stopped his petitioning. App. 695.

The record also supports the conclusion that Pioneer violated sections 8(a)(1) and (3) by subsequently reducing Guirey's hours and then laying him off. *See Transportation Management,* 462 U.S. at 397–98, 103 S.Ct. 2469. After the confrontation in the dining room, Guirey continued his pro-union activity. Three times he distributed leaflets at the hotel entrance, and on each occasion the company's security guards videotaped him and reported the incident to General Manager Chris Lowden. App. 254–59. In October 1995, Pioneer cut Guirey's hours without explanation, and without regard to seniority. *Pioneer Hotel,* 324 N.L.R.B. at 926–27. When Guirey was subsequently laid off, Jorge Garcia, his supervisor, said it was because of "poor work habits" and "a lack of consistency." App. 431. This explanation was contrary to Guirey's most recent six-month appraisal, which had rated his work as "successful"; the statement of Guirey's immediate supervisor that he was doing a good job and that the company wanted to give him a raise; and Garcia's own concession that he had not reviewed Guirey's personnel file. *See Pioneer Hotel,* 324 N.L.R.B. at 926; App. 304–05, 684, 704, 708–09, 730–31. We defer to the ALJ's finding that the reasons given for the work reduction and layoff were pretextual and intended to conceal Pioneer's true motive—retaliation for Guirey's union activity. *Pioneer Hotel,* 324 N.L.R.B. at 927.

Finally, we uphold the determination that Pioneer violated sections 8(a)(1) and (3) by suspending Anthony Zabala, reducing his work hours, and subsequently laying him off because of his pro-union activity. Zabala was a cook whose name appeared on the list of in-house organizers the union sent Pioneer in August 1995. *Id.* at 924 (citing App. 252). On August 9, Zabala was sent home for refusing to remove a union button. *Id.* Four days later, and without explanation, he was assigned to more onerous pantry duties. *Id.* During September and October, Zabala handed out union leaflets on the premises; company security officers videotaped the activity and gave written reports to Chris Lowden. App. 254–55, 258–61. On one occasion, Zabala allegedly criticized Pioneer while distributing handbills to a line of customers. *Id.* at 309. The next day, October 14, Zabala's supervisor (Garcia again) told him the company was cutting his hours as part of a "restructuring," and was keeping only people who were good workers and "loyal" to the company. *Pioneer Hotel,* 324 N.L.R.B. at 924; App. 506.

On October 21, 1995, Zabala received a three-day suspension for the handbilling incident. On October 26 he was laid off, purportedly due to the "restructuring," although there is substantial evidence the layoff deviated from Pioneer's promise that seniority would be followed during the restructuring process. *Pioneer Hotel,* 324 N.L.R.B. at 925. Garcia later told Zabala that he could be rehired only if he passed a cook's test, a qualification never previously required. *Id.* And notwithstanding the company's assertions that the layoff was motivated by a need to downsize its operations and that Zabala had failed the cook's test, the record contains evidence that Pioneer was simultaneously hiring temporary employees to do cooks' work without requiring them to take the test. *Id.*

The ALJ inferred and the NLRB agreed that unlawful motives lay behind the adverse actions taken against Zabala, based on evidence of Pioneer's general anti-union animus, the timing of Pioneer's actions vis-a-vis Zabala's pro-union activities, and the pretextual justifications of-

948

fered by Pioneer. *Id.* Discerning substantial evidence for the Board's findings of fact, and deferring to its reasonable inferences from those facts, we uphold the NLRB's determinations with respect to Zabala.

### III

For the reasons stated above, we grant the Board's cross-application for enforcement and deny Pioneer's petition for review in all respects other than those relating to Pioneer's termination of Grace and Grace's interrogation of Falk. We deny the cross-application and grant the petition with respect to those two issues.

*So ordered.*