In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 07-2752, 07-3110

ST. MARGARET MERCY HEALTHCARE CENTERS,

*Petitioner/Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

———————

Petition to Review and Cross-Application to Enforce
an Order of the National Labor Relations Board.
13-CA-38629

———————

ARGUED FEBRUARY 22, 2008—DECIDED MARCH 11, 2008

———————

Before EASTERBROOK, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The Labor Board found that St. Margaret, which owns and operates two hospitals in Indiana (but for the sake of simplicity we'll assume they're one), interfered with the right of the hospital nurses to organize and discriminated against one of the nurses, who was a union activist. The interference, the Board ruled, violated section 8(a)(1) of the National Labor Relations Act, and the discrimination section 8(a)(3). 29 U.S.C. §§ 158(a)(1), (a)(3).

Determining when an employer is unlawfully inter-fering with organizing activities requires weighing the employees' interest in organizing against the interest of the employers and others (such as, in this case, the hospi-tal's patients) in being free from disruptive interference by union organizers in the operation of the employer's business. E.g., *Sentry Markets, Inc. v. NLRB*, 914 F.2d 113, 115 (7th Cir. 1990); *First Healthcare Corp. v. NLRB*, 344 F.3d 523, 533-34 (6th Cir. 2003). "Accommodation between [employee-organization rights and employer property rights] must be obtained with as little destruction of one as is consistent with the maintenance of the other." *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956). So the Labor Board allows a hospital to forbid union activities in patient care areas, *NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 778 n. 8 (1979); *Mt. Clemens General Hospital v. NLRB*, 328 F.3d 837, 846-47 (6th Cir. 2003); *Stanford Hospital & Clinics v. NLRB*, 325 F.3d 334, 338-39 (D.C. Cir. 2003); *Brockton Hospital*, 333 N.L.R.B. 1367, 1368-69 (2001), and pursuant to this dispensation St. Margaret prohibits its employees "from soliciting other employees or distributing any materials *at any time* in patient care areas" (emphasis in original). These areas include, the rule goes on to provide, not only patient, operating, and other treat-ment rooms but also "halls and corridors" adjacent to those rooms, along with other areas used by patients. But when nurses or other employees are on break, union soliciting is permitted in "non-work areas," defined to include "employee break areas."

The lawfulness of the company's rule is conceded, but the Board found that the hospital violated it—and by doing so upset the balance the Board has struck between the hospital's interests and those of its employees—by forbid-

ding union activities in the "employee break areas" (also called "multipurpose rooms" or "breakrooms"), rooms in which nurses and other members of the hospital's staff can relax while off duty.

The hospital argues that because the breakrooms are opposite patient rooms in the hospital's intensive-care unit, separated from them only by a corridor, and the doors of the breakrooms are usually left open, the patients can hear the staff talking in them and so it is as if they were "patient care areas." It is not a ridiculous argument, or one precluded by the hospital's rule; the draftsmen may not have anticipated the noise problem. The corridors are wide, however—18-20 feet. (With the typical insouciance of lawyers regarding quantitative measures, which we have remarked despairingly in such cases as *Coffey v. Northeast Illinois Regional Commuter R.R. Corp.*, 479 F.3d 472, 478 (7th Cir. 2007), and *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 343 (7th Cir. 1998), the record does not contain the exact dimensions of the corridors.) (They contain nurses' stations.) There is only slight evidence that staff conversations ever carry from a breakroom at one side of the corridor to a patient's room at the other side. And eighteen feet is an underestimate of the distance the sound has to travel to be heard, because members of the staff when chatting in the breakrooms are obviously some distance inside the room rather than leaning up against the door; likewise the patients' beds are not up against the doors of their rooms. If conversations ever do carry so far, the obvious solution, which would protect the interests of the hospital and the employees without any sacrifice of either, is for the hospital to require that the doors of the breakrooms be shut except when someone is entering or leaving. The door could be on a

spring that would cause it to close automatically when-
ever it was opened.

The charge of discrimination relates to a disciplinary
sanction against a nurse for engaging in union solicita-
tion at a nurses' station. That is properly forbidden by
the hospital's rule. But the Board found that the rule,
which is not limited to solicitation related to union organ-
izing, was applied discriminatorily. In fact, it was ap-
plied only to employees who solicit in favor of unions.
As the Board found, "employee solicitation at the nurses'
station was a common practice. These included a
wide variety of solicitations, including solicitations for
Girl Scout cookies, March of Dimes, United Way, Secre-
tary's Day and Boss' Day, and 'going away' parties,
birthday parties, and other social occasions." We are
particularly struck by the hawking of "beach balm," a
product "created by a registered nurse to control bikini
line irritation" and optimized for "anyone who shaves or
waxes bikini lines." (Consumers will doubtless be reas-
sured to learn that beach balm is "natural, safe, and tested
by nurses, not on animals!") Management was aware of
these solicitations and even participated in some of them.

It is true, as a Board member pointed out in dissent, that
with the exception of the balm the solicitations were
charitable or social rather than commercial. But what
difference can that make? The hospital's rule forbids
solicitations in patient care areas, period, yet the only
solicitations that have ever drawn a rebuke from man-
agement are, as the hospital's lawyer acknowledged at
argument, those in support of union activities. Moreover,
it is far from obvious that a patient in intensive care will
be less disturbed by a nurse hawking bikini lotion or
organizing a birthday party than by a union organizer.

Patients, especially those in intensive care, and their family members and friends, would like to think that nurses when on duty give their exclusive attention to their professional duties and are not distracted by engaging in charitable, social, or commercial activities. The singling out of the union-supporting nurse for rebuke was discrimination against union activities.

The Board's order is amply supported, and so the petition for review is denied and the Board's application for an order judicially enforcing its order is granted.