# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 12, 2012          Decided July 10, 2015
Ordered Held in Abeyance February 19, 2013
Removed from Abeyance December 8, 2014

No. 11-1099

SOUTHERN NEW ENGLAND TELEPHONE COMPANY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,
INTERVENOR

———

Consolidated with 11-1143

———

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations
Board

———

*George E. O'Brien* argued the cause for petitioner. With
him on the briefs were *Thomas P. Dowd* and *Jason R.
Stanevich*.

*Zachary R. Henige*, Attorney, National Labor Relations
Board, argued the cause for respondent. With him on the brief

were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

*James B. Coppess* argued the cause and filed the brief for intervenor.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  Common sense sometimes matters in resolving legal disputes.  This case is a good example.  AT&T Connecticut banned employees who interact with customers or work in public – including employees who enter customers' homes – from wearing union shirts that said "Inmate" on the front and "Prisoner of AT$T" on the back.  Seems reasonable.  No company, at least one that is interested in keeping its customers, presumably wants its employees walking into people's homes wearing shirts that say "Inmate" and "Prisoner."  But the NLRB ruled in a 2-1 decision that AT&T committed an unfair labor practice by barring its employees from wearing those shirts.  Section 7 of the National Labor Relations Act protects the right of employees to wear union apparel at work.  But under this Court's precedent and Board decisions, there is a "special circumstances" exception to that general rule:  A company may lawfully prohibit its employees from displaying messages on the job that the company reasonably believes may harm its relationship with its customers or its public image.  Put simply, it was reasonable for AT&T to believe that the "Inmate/Prisoner" shirts may harm AT&T's relationship with its customers or its public image.  Therefore, AT&T lawfully

prohibited its employees here from wearing the shirt. We grant AT&T's petition for review, vacate the Board's decision and order with respect to the "Inmate/Prisoner" shirts, and deny the Board's cross-application for enforcement.[1]

\* \* \*

AT&T Connecticut provides telecommunication services throughout Connecticut. (We will use AT&T as shorthand to refer to AT&T Connecticut.) A union known as the Communication Workers of America represents AT&T's employees. As part of a public campaign to put pressure on AT&T during contentious contract negotiations, the union distributed T-shirts to its members. The shirts were white with black lettering. The front of the shirt said "Inmate #" and had a black box beneath the lettering. The back of the shirt said "Prisoner of AT$T," with several vertical stripes above and below the lettering. The shirt contained no reference to the union or to the ongoing labor dispute.

On two occasions, the union encouraged employees to wear the "Inmate/Prisoner" shirt to work, and hundreds of employees did so. Each day, AT&T supervisors instructed all employees who interacted with customers or worked in public to remove the "Inmate/Prisoner" shirt. AT&T issued one-day suspensions to 183 employees who did not comply with the directive to remove the shirt.

---

[1] This case was initially argued in December 2012 and then held in abeyance pending resolution of various challenges to the constitutionality of certain appointments to the NLRB. Those challenges have now been resolved in a way that does not affect this case. *See Mathew Enterprise, Inc. v. NLRB*, 771 F.3d 812 (D.C. Cir. 2014).

Publicly visible employees consist of two groups: technicians who install and repair lines at residences and businesses, and technicians who work on construction projects in public. Those publicly visible employees are subject to AT&T's appearance standards. AT&T requires those employees to present a professional appearance at all times and to refrain from wearing clothing with "printing and logos that are unprofessional or will jeopardize" the "Company's reputation." Notwithstanding the appearance guidelines, in the years before this incident, several individual AT&T employees had worn shirts printed with questionable messages and had not been disciplined for doing so. Examples included: "Support your local hookers" (with an image of a fishing lure); "The liver is evil. It must be punished"; "I'm not drunk. I'm just a race fan"; "If I want your opinion . . . . . I'll take the tape off your mouth!"; and "Out Of Beer. Life Is Crap."

After the suspensions in this case, the union filed an unfair labor practice charge. According to the union, AT&T infringed on employees' rights under Section 7 of the National Labor Relations Act by disciplining employees who had refused to remove their "Inmate/Prisoner" shirts. *See* 29 U.S.C. § 157.

AT&T responded by invoking the "special circumstances" doctrine, a limitation on Section 7 long recognized by the Supreme Court. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801-03 (1945). Under the "special circumstances" doctrine, a company may lawfully ban union messages on publicly visible apparel on the job when the company reasonably believes the message may harm its relationship with its customers or its public image. *See*

*Bell-Atlantic-Pennsylvania, Inc.*, 339 NLRB 1084, 1086 (2003).

In arguing that the "special circumstances" doctrine applied here, AT&T explained that it banned only employees who interact with customers or work in public from wearing the "Inmate/Prisoner" shirt. *See Bell-Atlantic-Pennsylvania*, 339 NLRB at 1084-85. AT&T officials testified that the shirts could alarm or confuse customers, could cause customers to believe that AT&T employees were actually convicts, or could harm the company's public image more generally. AT&T was particularly concerned about how the shirts would be perceived in Connecticut in light of a recent and widely publicized home invasion in Cheshire, Connecticut, in which three people were murdered. And AT&T expressed concern not only about the specific risk that customers would believe the employee was actually a convict, but also about the shirt's potential negative effects on AT&T's public image more generally.

The administrative law judge decided that AT&T's prohibition of the shirts violated the Act. In a divided decision, the National Labor Relations Board affirmed the ALJ's conclusion, finding that the "Inmate/Prisoner" shirt "would not have been reasonably mistaken for prison garb" and that "the totality of the circumstances would make it clear" that a technician wearing the shirt was an AT&T employee "and not a convict." *Southern New England Telephone Co.*, 356 NLRB No. 118, at 1 (2011). Board Member Hayes dissented, concluding that the potential for the shirt "to alarm customers and thereby damage" AT&T's "reputation was sufficient to justify its regulation." *Id.* at 3.

AT&T has filed a petition for review of the Board's decision. We review the Board's application of the law to the facts for reasonableness. *See New York & Presbyterian Hospital v. NLRB*, 649 F.3d 723, 729 (D.C. Cir. 2011).

The "special circumstances" exception to Section 7 is designed "to balance the potentially conflicting interests of an employee's right to display union insignia and an employer's right to limit or prohibit such display." *Nordstrom, Inc.*, 264 NLRB 698, 700 (1982). "Special circumstances" include "protecting the employer's product" and "maintaining a certain employee image." *Guard Publishing Co. v. NLRB*, 571 F.3d 53, 61 (D.C. Cir. 2009).

The Board has repeatedly recognized that an employer that reasonably believes its employees' union apparel at work may damage the employer's relationship with its customers or its public image may invoke the "special circumstances" exception. In one such case, employees of a grocery store wore union shirts stating "Don't Cheat About the Meat!" *Pathmark Stores, Inc.*, 342 NLRB 378, 378 (2004). The Board ruled that "the slogan reasonably threatened to create concern" among "customers about being cheated, raising the genuine possibility of harm to the customer relationship." *Id.* at 379. In another case, a company banned its employees from wearing T-shirts depicting employees as squashed carcasses labeled "Road Kill." *See Bell-Atlantic-Pennsylvania*, 339 NLRB at 1084-85. The Board upheld an arbitrator's conclusion that the ban was appropriate because the employer "reasonably could believe that observing the shirt would unsettle the public despite the absence of explicit disparagement of the [company's] products or service." *Id.* at 1085. The Board stated: "An employer's concern about the 'public image' presented by the apparel of its

employees is, therefore, a legitimate component of the 'special circumstances' standard." *Id.* at 1086.

Similarly, this Court has concluded that "special circumstances" may justify an employer's ban on a shirt that mocked a company incentive program. The incentive program was known as "WOW." The shirts said "I don't need a WOW to do my job." *See Medco Health Solutions of Las Vegas, Inc. v. NLRB*, 701 F.3d 710, 712, 716-17 (D.C. Cir. 2012). This Court criticized the Board's cursory rejection of the company's "straightforward argument that the message on the T-shirt was insulting to the company and would have undermined its efforts to attract and retain customers." *Id.*

It is true that the employer bears the burden of demonstrating "special circumstances." *See Guard Publishing*, 571 F.3d at 61. But the Board has recognized that an employer can meet its burden by demonstrating a reasonable belief that the message may damage customer relations – even in the absence of evidence of actual harm. In *Pathmark Stores*, for example, the prohibited message created a reasonable risk to the customer relationship, and the Board did not require the company to present evidence that the shirts actually affected customer behavior. *See* 342 NLRB at 379. Likewise, in *Medco Health*, this Court stated that Board precedent did not "require the employer to offer additional evidence beyond a relationship between its business and the banned message." 701 F.3d at 717; *see also Nordstrom*, 264 NLRB at 701 n.12 (employer "need not await customer complaint before it takes legitimate action to protect its business").

In this case, we conclude that the Board applied the "special circumstances" exception in an unreasonable way. In

particular, the Board found that the "Inmate/Prisoner" shirt "would not have been reasonably mistaken for prison garb" and thus was not "reasonably likely, under the circumstances, to cause fear or alarm" among AT&T's customers. *Southern New England*, 356 NLRB at 1. As this Court observed in *Medco Health*, however, the Board's "expertise is surely not at its peak in the realm of employer-*customer* relations." 701 F.3d at 717. And here, the appropriate test for "special circumstances" is not whether AT&T's customers would confuse the "Inmate/Prisoner" shirt with actual prison garb, but whether AT&T could reasonably believe that the message may harm its relationship with its customers or its public image. To resolve this case, it is enough to ask the question, as Member Hayes did in dissent: "What would you think about a company that permitted its technicians to wear such shirts when making home service calls?" *Southern New England*, 356 NLRB at 2.

Citing our decision in *Guard Publishing*, the Board suggests that AT&T did not enforce its ban on unprofessional clothing in an evenhanded way, allowing other questionable shirts to be worn while banning the "Inmate/Prisoner" shirt. But the other shirts were not nearly as problematic as the one at issue here, or at least a reasonable employer could so conclude. Moreover, no case holds that a company that on some occasions has allowed unprofessional clothing to be worn by employees is somehow estopped from prohibiting other unprofessional clothing. The ultimate question for the Board in any individual case is whether the employer has shown a reasonable belief that the particular apparel may harm the employer's relationship with its customers or its public image.

In short, given the straightforward evidence that AT&T introduced of the shirt's message and the circumstances under

which customers interact with or can see employees wearing the shirt, the Board should have held that "special circumstances" applied here.

\* \* \*

We grant AT&T's petition for review, vacate the Board's decision and order with respect to the "Inmate/Prisoner" shirts, and deny the Board's cross-application for enforcement.

*So ordered.*